**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **CARMAX ENTERPRISE SERVICES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:22cv463-MHL** |
| ) | |
| **PRECISION GLOBAL MEDICAL** ) | |
| **DISTRIBUTORS, LLC d/b/a PRECISION** ) | |
| **GLOBAL MD, LLC,** ) | |
| ) | |
| **Defendant/Third-Party Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED HEALTH SOLUTIONS, LLC,** *et al.*, ) | |
| ) | |
| **Third-Party Defendants.** ) | |
| ) | |

## REPORT AND RECOMMENDATION

This matter comes before the undersigned Magistrate Judge for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on Third-Party Defendant United Health Solutions, LLC's ("United Health") Motion to Dismiss pursuant to Rule 12(b)(2) ("Motion to Dismiss") and Motion for Hearing. (ECF Nos. 11, 18, 31.) Third-Party Plaintiff, Precision Global Medical Distributors, LLC ("Precision Global"), filed its opposition to the Motion to Dismiss, and United Health filed its reply in support thereof. (ECF Nos. 16, 17.) On May 3, 2023, the Court heard oral argument. The matter is ripe for disposition.

For the reasons set forth below, the Court RECOMMENDS that United Health's Motion to Dismiss (ECF No. 11) be GRANTED without prejudice and the Motion for Hearing be DENIED AS MOOT (ECF No. 18).

## I.    FACTUAL BACKGROUND[1]

On October 27, 2021, CarMax Enterprise Services, LLC ("CarMax"), a Virginia-based company, sent a purchase order (the "CarMax PO") to Precision Global, a Georgia-based company.  (ECF No. 5, Third-Party Compl. ¶¶ 1, 12.)  The CarMax PO purchases 120,960 COVID-19 Antigen Rapid Test Kits for $1,088,640 and requires the tests to be approved by the Food and Drug Administration ("FDA").  (ECF No. 5, Third-Party Compl. ¶ 12.)  It lists a shipping address for a "CarMax MA Inventory Warehouse" in Massachusetts and provides that "delivery of Products shall be F.O.B. place of designation."[2]  (ECF No. 5-1, at p.1 & ¶ 5.)   The CarMax PO provides Virginia addresses for the invoice and any notices issued thereunder.  (*Id.* at p.1 & ¶ 23.)  It also contains a choice of law and venue provision designating Virginia as the governing law and proper forum for any disputes thereunder.  (*Id.* ¶ 24.)

To fulfill its obligations in the CarMax PO, Precision Global submitted a separate purchase order to United Health (the "Precision Global PO").[3]  (ECF No. 5, Third-Party Compl. ¶ 13.)  United Health is an Illinois limited liability company with its principal place of business in

---

[1] For purposes of ruling on the Motion to Dismiss, the Court recites the facts as alleged in the pleadings, and it construes the relevant allegations "in the light most favorable to [Precision Global], assume[s] credibility, and draw[s] the most favorable inferences for the existence of jurisdiction."  *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).

[2] "FOB, short for 'free on board,' is '[a] mercantile term denoting that the seller is responsible for delivering goods . . . to the consignee at a specific location.'"  *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 494 (E.D. Va. 2003) (quoting Black's Law Dictionary 676 (7th ed. 1999)).  The place of designation, here Massachusetts, is the place where the title and risk of loss passes to the purchaser, CarMax.  *See Fellowes, Inc. v. Michilin Prosperity Co*., 491 F. Supp. 2d 571, 578 (E.D. Va. 2007).

[3] United Health then contracted with Global Health, Global Health contracted with Sumner Groups, and the list goes on.  (ECF No. 5, Third-Party Compl. ¶¶ 14-16.)  Precision Global names these additional parties as third-party defendants as well.  (*See generally* ECF No. 5, Third-Party Compl.)

Illinois.[4]  (*Id.* ¶ 2.)  The Precision Global PO orders 120,960 "FlowFlex OTC Single Pack Rapid Antigen Test" kits for a total price of $846,720.  (ECF No. 5, Third-Party Compl. ¶ 13; ECF No. 5-2.)  It lists a shipping address in Massachusetts to "Fulfillment America Inc., Attn: CarMax Warehouse" and a payment address in Illinois.  (ECF No. 5-2.)  The Precision Global PO does not contain any choice of law or choice of forum provision.  (*See id.*)  Nor does it by its terms incorporate or reference the CarMax PO.  (*Id.*)

United Health is not a party to the CarMax PO, and the CarMax PO prohibits Precision Global from assigning any rights or obligations thereunder without CarMax's written consent. (ECF No. 5-1, ¶ 22.)  At oral argument, Precision Global acknowledged that United Health did not receive a copy of the CarMax PO.  However, "United Health was informed and was aware that the Precision Global P.O. was intended for use to supply and fulfill the CarMax P.O. and United Health agreed to do so."  (ECF No. 5, Third-Party Compl. ¶ 13.)  United Health also knew that the tests were intended for use "for at-home testing" by CarMax employees.  (*Id.* ¶ 50.)  Although not alleged in the Third-Party Complaint or briefed in connection with the Motion to Dismiss, at oral argument, Precision Global proffered that United Health participated in multiple conference calls with Precision Global and CarMax representatives, who were located in Virginia.  According to the proffer, the parties discussed the terms of the CarMax PO, delivery of the tests, and CarMax's

---

[4] The Third-Party Complaint alleges that United Health has a registered office in Richmond, Virginia.  (ECF No. 5, Third-Party Compl. ¶ 11.)  In challenging personal jurisdiction, United Health presents numerous exhibits showing that it does not have any registered office in Virginia and proving that the registered office alleged in the Third-Party Complaint belongs to a different, and now defunct, company formed in Florida.  (ECF Nos. 12, 12-1, 12-2, 12-3, 12-4.) At oral argument, Precision Global conceded that United Health does not have a registered office in Virginia.  The Court therefore does not consider this allegation in weighing the existence of personal jurisdiction.  *See Reynolds Foil, Inc. v. Pai*, 2010 U.S. Dist. LEXIS 28473, at *4-5 (E.D. Va. Mar. 25, 2010) (stating that the Court "may presume that any uncontradicted evidence submitted by either party is true").

plans to distribute the tests to employees for at-home testing, with the bulk of the tests ear-marked for Virginia.

Shortly after delivery of the tests to the Massachusetts address, a recall was issued rendering them non-FDA approved. (ECF No. 5, Third-Party Compl. ¶ 23.) CarMax then revoked acceptance of the tests and demanded a full refund of its $1,088,640 purchase price paid to Precision Global. (*Id.* ¶ 24.) Although Precision Global returned $241,920 and United Health returned $116,040, CarMax has not received a full refund. (*Id.* ¶ 25.)

## II.    PROCEDURAL HISTORY

On June 27, 2022, CarMax filed a Complaint against Precision Global asserting claims for (1) breach of contract and (2) money had and received. (ECF No. 1.) CarMax seeks $730,680, the balance that it has not yet been refunded, plus interest, costs, and fees. (*Id.* ¶ 31.) On August 26, 2022, Precision Global answered the Complaint and also filed a Third-Party Complaint against seven defendants, including United Health. (ECF No. 5.)

Precision Global asserts four claims against United Health: (1) Count I—Indemnity, seeking to hold United Health "vicariously liable to Precision Global for the full amount to which Precision Global is found liable" (ECF No. 5, Third-Party Compl. ¶ 47); (2) Count II—Breach of Contract, contending that "United Health's failure to deliver useable test kits and failure to refund Precision Global the full purchase order amount is a material breach of the Precision Global P.O." (*id.* ¶ 54); (3) Count V—Money Had and Received, seeking a full refund of the Precision Global PO (*id.* ¶ 74); and (4) Count VII—Attorneys' Fees, seeking reasonable attorneys' fees for having to maintain and defend this action (*id.* ¶ 83).

United Health responded to the Third-Party Complaint by filing the Motion to Dismiss challenging personal jurisdiction. (ECF Nos. 11-12.) It argues that personal jurisdiction in

4

Virginia cannot lie over a contract dispute between Georgia-based Precision Global and Illinois-based United Health where the contract designated Massachusetts as the place of performance. Precision Global responds that United Health knew that: (1) the Precision Global PO intended to fulfill the CarMax PO; (2) CarMax is a Virginia-based company; and (3) a significant number of tests would be used in Virginia by CarMax employees. Precision Global contends that these contacts are sufficient to invoke personal jurisdiction. The Court finds that Precision Global has failed to make a prima facie showing of personal jurisdiction over United Health.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to challenge the existence of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). While the defendant is responsible for raising the issue, the plaintiff "bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).

When the Court addresses the jurisdictional issue based on the motion papers, supporting legal memoranda, and relevant allegations of the pleadings, "the plaintiff need only make a prima facie showing of personal jurisdiction."[5] *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 396 (4th Cir. 2003) (citing *Combs,* 886 F.2d at 676). If a plaintiff "makes the requisite showing, the defendant[] then bear[s] the burden of presenting a 'compelling case' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Bay Tobacco, LLC*, 261 F. Supp. 2d at 491-92 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).

---

[5] Neither United Health nor Precision Global requested an evidentiary hearing, nor did the parties choose to present evidence by affidavit or otherwise. Therefore, the Court makes its Report and Recommendation based on the pleadings, briefing, accompanying exhibits, and evidence proffered by the parties.

In deciding whether a prima facie showing of personal jurisdiction has been made, "[t]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.  The Court may also consider "'both plaintiff and defendant's proffered proof,'" *People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC*, 922 F. Supp. 2d 536, 541 (E.D. Va. 2013) (quoting *PBM Prods. v. Mead Johnson Nutrition Co.*, 2009 U.S. Dist. LEXIS 93312, at *4 (E.D. Va. Sept. 29, 2009)), and "may presume that any uncontradicted evidence submitted by either party is true." *Reynolds Foil, Inc.*, 2010 U.S. Dist. LEXIS 28473, at *4-5.

## IV.    JURISDICTIONAL ANALYSIS

"'Personal jurisdiction is the phrase used to express a court's power to bring a person into its adjudicative process.'" *People Exp. Airlines, Inc*, 922 F. Supp. 2d at 541 (quoting *NobleSec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 525 (E.D. Va. 2009)).  The Court may exercise jurisdiction over a defendant based on either general or specific personal jurisdiction "depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc.*, 334 F.3d at 397.  At oral argument, Precision Global conceded that general jurisdiction does not exist over United Health.[6]  The Court, therefore, need only determine whether specific jurisdiction exists over United Health for the claims asserted by Precision Global.

---

[6] General personal jurisdiction exists over a defendant with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009).  For a non-resident defendant, those continuous and systematic in-state "activities must render the out-of-state corporation essentially at home in the forum State." *Reed v. Beverly Hills Porsche*, 307 F. Supp. 3d 494, 501 (W.D. Va. 2018) (internal citations omitted).  Precision Global does not contend nor do the pleadings show that United Health has continuous and systematic contacts with Virginia sufficient to trigger general jurisdiction.

Determining whether specific jurisdiction exists over a non-resident defendant involves a two-step inquiry.[7]  *Carefirst of Md., Inc.*, 334 F.3d at 397.  First, the Court must determine that the long-arm statute of Virginia, Va. Code Ann. § 8.01–328.1, permits the exercise of jurisdiction. *Carefirst of Md., Inc.*, 334 F.3d at 397.  Second, the Court must find that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Constitution.  *Id.* Both conditions must be met for the proper exercise of jurisdiction.  *Id.*

Here, the Court finds that neither part of the test would permit the exercise of jurisdiction. Therefore, even viewing the allegations and proffers in the light most favorable to Precision Global, Precision Global has failed to make a prima facie showing of personal jurisdiction over United Health.

**A.  Virginia's Long-Arm Statute Does Not Extend Jurisdiction to United Health**

Virginia's long-arm statute allows "[a] court [to] exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from" a number of enumerated activities.   Va. Code Ann. § 8.01-328.1(A).[8]   Precision Global contends that subsections (2) and (5) authorize jurisdiction over United Health.[9]  Those subsections permit the exercise of personal jurisdiction over a person as to causes of action arising from the person's:

---

[7] The same analysis applies when determining jurisdiction over a third-party plaintiff's claims against a third-party defendant.  *See Noble Sec., Inc.*, 611 F. Supp. 2d at 526.

[8] Although certain subsections of Virginia's long-arm statute have been interpreted to extend to the limits of Constitutional due process, *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009), other subsections "provide[] a ceiling of procedural protections above the federal floor of constitutional due process." *DeSantis v. Hafner Creations*, 949 F. Supp. 419, 426 (E.D. Va. 1996).  Therefore, "[t]he requirements of the long-arm statute must be satisfied 'even in those situations where it could plausibly be argued that a lesser standard would meet due process.'"  *Colt Def. LLC v. Heckler & Koch Def., Inc.*, 2004 U.S. Dist. LEXIS 28690, at *36 (E.D. Va. Oct. 22, 2004) (quoting *Robinson v. Egnor*, 699 F. Supp. 1207, 1211 (E.D. Va. 1988)).

[9] In briefing, Precision Global lists only subsection (A)(5).  However, at oral argument, Precision Global identified subsection (A)(2) as an alternative ground for jurisdiction under the long-arm statute.

2. Contracting to supply services or things in this Commonwealth;

. . . [or]

5. Causing injury in this Commonwealth to any person by breach of warranty
expressly or impliedly made in the sale of goods outside this Commonwealth when
he might reasonably have expected such person to use, consume, or be affected by
the goods in this Commonwealth, provided that he also regularly does or solicits
business, or engages in any other persistent course of conduct, or derives substantial
revenue from goods used or consumed or services rendered in this
Commonwealth[.]

Va. Code Ann. § 8.01-328.1(A)(2), (5).  The Court finds that neither subsection reaches United

Health's contacts with the Commonwealth and that the long-arm statute does not permit the

exercise of personal jurisdiction over United Health.

1. Subsection (A)(2) Does Not Apply Because United Health Did Not Contract to
Supply Things in Virginia

Section 8.01-328.1(A)(2) authorizes personal jurisdiction over a party for causes of action

stemming from that party's "[c]ontracting to supply services or things *in this Commonwealth*."

Va. Code Ann. § 8.01-328.1(A)(2) (emphasis added).  The relevant inquiry in applying this

subsection is the place of supply.  *Reed*, 307 F. Supp. 3d at 499-500.

The Precision Global PO, which serves as the basis for the third-party claims against United

Health, calls for delivery of the tests in Massachusetts.  (ECF No. 5-2.)  Those goods were in fact

supplied and delivered in Massachusetts, not in Virginia as required by § 8.01-328.1(A)(2).  (ECF

No. 5, Third-Party Compl. ¶¶ 23, 52.)

Precision Global contends that § 8.01-328.1(A)(2) applies because United Health knew the

tests, or at least a substantial portion of them, would eventually end up in Virginia.  Specifically,

Precision Global alleges that "United Health was informed and was aware that the Precision Global

P.O. was intended for use to supply and fulfill the CarMax P.O. and United Health agreed to do

so."  (ECF No. 5, Third-Party Comp. ¶ 13.)  Further, Precision Global alleges that United Health

8

knew the tests would be used by CarMax employees located in Virginia.  (*Id.* ¶ 50.) At oral argument, Precision Global proffered that United Health participated in multiple calls with Precision Global and CarMax wherein they discussed the number of tests that would be shipped to Virginia.  But as at least one district court in the Fourth Circuit has found under similar facts, these allegations fail to establish jurisdiction under § 8.01-328.1(A)(2).

In *Reed*, 307 F. Supp. 3d 494, the plaintiff, a Virginia resident, contacted a company in California through its website, "kicking off remote negotiations by phone, email, and text message" for the purchase of a car.  *Id.* at 496.  The defendant ultimately sent an agreement to the plaintiff in Virginia, which the plaintiff signed in Virginia, and then returned to the defendant for execution in California.  *Id.* at 496, 498.  The plaintiff then arranged to have the vehicle towed from California to Virginia.  *Id.* at 499.  In deciding whether it could exercise personal jurisdiction over the California company, the Court found subsection (A)(2) inapplicable, because "the thing supplied—the car—was supplied *in California*, not Virginia."  *Id.* at 499 (emphasis in original). "Specifically, Plaintiff's agent [the towing company] picked up the car directly from [the defendant's] site in California.  At that point, delivery was complete."  *Id.* at 499.  In arguing for jurisdiction, the plaintiff "point[ed] out that 'it was known from the very beginning' that he was in Virginia, and that therefore the car would be used in the Commonwealth, even though [he] arranged to pick it up in California."  *Id.* at 500.  The court found that while that "may be true, [] it is legally irrelevant under the terms of subsection (A)(2)," because subsection (A)(2) does not look to the location where the goods "eventually end up," but looks to the place of supply.  *Id.*

For similar reasons, § 8.01-328.1(A)(2) has no application here where United Health contracted to supply things in Massachusetts.  This is true regardless of whether it had knowledge that the goods would travel to Virginia.  Knowledge that the goods will be used elsewhere "is

legally irrelevant under the terms of subsection (A)(2)." *Reed*, 307 F. Supp. 3d at 500.  Instead, the only relevant inquiry is the location of supply.  *See, e.g., Richard v. Ivy Grp. Int'l, Inc.*, 2011 U.S. Dist. LEXIS 51014, at \*16 (E.D. Va. May 10, 2011) (finding that subsection (A)(2) applied only where the Court concludes that a contract was made or performed in Virginia); *Processing Rsch., Inc. v. Larson*, 686 F. Supp. 119, 122 (E.D. Va. 1988) (finding subsection (A)(2) inapplicable when the goods were supplied in Colorado).  "The long arm of § 8.01 does not extend to a contract formed and performed outside Virginia." *Promotions, Ltd. v. Brooklyn Bridge Centennial Comm.*, 763 F.2d 173, 175 (4th Cir. 1985) (finding that jurisdiction did not lie under subsection (A)(2) because the contract "was made and was to be carried out in New York," not Virginia).  Section 8.01-328.1(A)(2) does not confer jurisdiction over United Health because the Precision Global PO sets forth Massachusetts as the place of supply, not Virginia.

> 2. <u>Subsection (A)(5) Does Not Apply Because United Health Did Not Derive Substantial Revenue from the Use of Goods in Virginia</u>

Under subsection (A)(5), a party may be subject to personal jurisdiction for causes of action stemming from that party "[c]ausing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such person to use, consume, or be affected by the goods in this Commonwealth, provided that" one of three conditions are met.   Va. Code Ann. § 8.01-328.1(A)(5).  The defendant must either "(1) regularly conduct or solicit business in Virginia; (2) engage in any other persistent course of conduct in Virginia; or (3) derive substantial revenue from goods used, goods consumed or services rendered in Virginia." *PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at \*7-9 (W.D. Va. Jul. 22, 2016).  Here, Precision Global

contends that the exercise of jurisdiction is proper over United Heath under the substantial revenue prong. (ECF No. 16, at 6.) The Court finds otherwise.[10]

Precision Global has failed to make a prima facie showing that United Health "derive[s] substantial revenue from goods used, goods consumed or services rendered *in Virginia*." Va. Code Ann. § 8.01-328.1(A)(5) (emphasis added).[11] Virginia's long-arm statute does not reach revenue received for the delivery of goods in another state. Rather, the statute specifies that the substantial revenue must be *derived* from goods used or consumed *in Virginia*. Even construing the allegations before the Court in the light most favorable to Precision Global, United Health did *not* derive revenue from the tests being used in Virginia. It is unclear from the pleadings whether the

---

[10] At oral argument, United Health challenged the application of subsection (A)(5) by pointing out that Precision Global has not asserted any breach of warranty claim. Precision Global, on the other hand, contends that subsection (A)(5) extends to its claims sounding in contract as well. (ECF No. 16, at 5.)

The Court found only one decision addressing this issue. *Reed*, 307 F. Supp. 3d at 500-01. That decision acknowledges the "paucity of Virginia law on the precise difference between a breach of contract and breach of warranty." *Id.* at 500. But the court concludes: "[T]he Supreme Court of Virginia has employed a functional approach to the relationship between breach of warranty and contract, and when the substance of the two is the same, the difference in nomenclature is immaterial." *Id* at 501. The Court need not decide this issue because it finds subsection (A)(5) inapplicable for other reasons discussed below.

[11] The Court assumes, without deciding, that Precision Global could show that United Health received substantial revenue under the Precision Global PO. "When the quantity of goods sold into the forum state is a small percentage of the defendant company's nationwide sales, 'the substantial revenue test may be satisfied . . . if [the revenue derived from the forum state] exceed[s] the state's per capita share of substantial nationally derived revenue.'" *Taltwell, LLC v. Zonet USA Corp.*, 2007 U.S. Dist. LEXIS 93465, at *15 (E.D. Va. Dec. 19, 2007) (quoting *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 206 (D.C. Cir. 1981)). While the pleadings allege United Health received $846,720 from Precision Global, no allegations compare United Health's purported sale of goods in Virginia with its per capita nationwide average. This Court has found that the substantial revenue theory fails when the plaintiff does not present such information. *Rosario v. Wands*, 2009 U.S. Dist. LEXIS 84992, at *9 n.1 (E.D. Va. Sept. 17, 2009); *Taltwell, LLC*, 2007 U.S. Dist. LEXIS 93465, at *17. At the same time, other "courts have generally found that the amount must exceed $300" to constitute substantial revenue. *Bay Tobacco*, 261 F. Supp. 2d at 495. Even assuming, without deciding, that the payment received by United Health under the Precision Global PO qualifies as substantial revenue, this theory fails for other reasons discussed below.

tests even entered Virginia, rather than being rejected in Massachusetts. (*See* ECF No. 5, Third-Party Compl. ¶¶ 22, 24.) Regardless, United Health's contract with Precision Global was complete upon delivery of the tests in Massachusetts. (*See* ECF No. 5-2.) Whether Precision Global or any other party thereafter transported the tests to Virginia or elsewhere had no impact on the revenue United Health derived. Because the revenue received by United Health did not turn on the use or consumption of goods *in Virginia*, the long-arm statute does not reach United Health's conduct.

**B. The Exercise of Personal Jurisdiction over United Health Would Not Comport with the Due Process Clause of the Constitution.**

In addition to finding that Virginia's long-arm statute does not reach United Health's alleged contacts with Virginia, the Court also finds that the exercise of personal jurisdiction over United Health would not comport with the Due Process Clause of the Constitution.

The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Fourth Circuit has adopted a three-part inquiry for analyzing whether specific jurisdiction exists and comports with due process, requiring courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278 (internal quotations and citations omitted). None of these prongs point to Virginia as an appropriate forum for Precision Global's claims against United Health.

1.   The Allegations Do Not Show Purposeful Availment by United Health

Under the purposeful availment prong, courts conduct a case-by-case analysis of multiple

factors, including:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2)
> "whether the defendant owns property in the forum state;" (3) "whether the
> defendant reached into the forum state to solicit or initiate business;" (4) "whether
> the defendant deliberately engaged in significant or long-term business activities in
> the forum state;" (5) "whether the parties contractually agreed that the law of the
> forum state would govern disputes;" (6) "whether the defendant made in-person
> contact with the resident of the forum in the forum state regarding the business
> relationship;" (7) "the nature, quality and extent of the parties' communications
> about the business being transacted;" and (8) "whether the performance of
> contractual duties was to occur within the forum."

*Universal Leather, LLC v. Koro Ar, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014) (quoting *Consulting

Eng'rs*, 561 F.3d at 278).  Based on the allegations and proffered evidence before the Court, these

factors overwhelmingly, if not all, weigh against a finding of purposeful availment.

United Health has no offices, employees, or property in Virginia.  No allegations suggest

that United Health reached into Virginia to initiate business.  Instead, it appears Precision Global

contacted United Health, an Illinois company.  (ECF No 5, Third-Party Compl. ¶¶ 2, 13.)  Precision

Global does not allege that United Health had any long-term business relationship with Virginia.

In addition, the Precision Global PO contains no provision selecting Virginia as the governing law

or choice of forum.  It also establishes Massachusetts, not Virginia, as the place of performance—

the place of delivery.  Finally, the pleadings contain no allegations about United Health making in

person visits to Virginia.  Instead, Precision Global proffers only that United Health participated

in multiple phone conversations which included Virginia representatives from CarMax.  Given

these facts, most, if not all, of the above factors weigh against a finding of purposeful availment.

Precision Global makes three arguments in an effort to show otherwise.  The Court addresses each below, but ultimately concludes that United Health has not purposefully availed itself of the privilege of conducting business in Virginia.

### a.  The CarMax PO Does Not Create Virginia Contacts for United Health

Precision Global first contends that "United Health contracted with Precision Global for the specific purpose of fulfilling Precision Global's purchase order with CarMax . . . , a Virginia resident."  (ECF No. 16, at 2.)  Precision Global alleges that United Health was generally aware of the CarMax PO and knew that the Precision Global PO "was intended for use to supply and fulfill" the CarMax PO.  (ECF No. 5, Third-Party Compl. ¶ 13.)  Under these factual allegations, Precision Global asks the Court to impute CarMax's contacts with Virginia and the CarMax PO's Virginia choice of law and forum provision onto United Health.  The law, however, does not support such efforts to bootstrap one party's contacts onto another.

For example, in *Lesnick v. Hollingsworth & Vose Co.*, the plaintiff asked the court to exercise personal jurisdiction in Maryland over the defendant, an out-of-state manufacturer.  35 F.3d 939, 941 (4th Cir. 1994).  The plaintiff argued that the defendant should be imputed with a non-resident distributor's "clearly adequate contacts with Maryland because it 'purposefully availed itself of the privilege of conducting business, through [the distributor's] sales, in the entire United States,'" including Maryland.  *Id.*  The district court granted a motion to dismiss for lack of personal jurisdiction, finding that the defendant was "not engaged directly, as is [the distributor], in bringing the alleged offending product into Maryland, or doing anything with respect to Maryland, other than supplying its product to the defendant [distributor] in a state other than

14

Maryland." *Id.*  The Fourth Circuit affirmed, finding "no affirmative action by [the defendant] rising to the level of purposeful availment." *Id.* at 947.

Similarly, here, United Health did not purposefully avail itself of the jurisdiction of Virginia by virtue of its knowledge that the Precision Global PO related to a separate contract between Precision Global and CarMax, a Virginia-based entity.  Just as "the plaintiff cannot be the only link between the defendant and the forum," a third-party cannot serve as that link either. *New Venture Holdings, LLC v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683, 694 (ED. Va. 2019) (internal citations omitted).  Just because the CarMax PO "envisions one party discharging its obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract," much less a non-party to the contract, like United Health. *Id.*  Again, United Health's own conduct "must form the necessary connection with the forum State," not the conduct of CarMax or Precision Global. *Id.*

The Court also declines to impute the Virginia choice of law and forum provision from the CarMax PO onto United Health.  Such a provision in a third-party's contract cannot form the basis of personal jurisdiction against United Health.  No such provision appears in the Precision Global PO, and the CarMax PO does not serve as the basis of Precision Global's claims against United Health.  In these circumstances, the CarMax PO's choice of law and forum provision does not create personal jurisdiction over United Health, who was not a party to that contract. *See Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*, 908 F. Supp. 2d 763, 770 n.6 (W.D. Va. 2012).

> b.  *The Stream of Commerce Theory Does Not Show Purposeful Availment*

Next, Precision Global argues that purposeful availment may be found under the stream of commerce theory.  (ECF No. 16, at 7.)  Under this theory, personal jurisdiction exists over a defendant who "delivers its products into the stream of commerce with the expectation that they

will be purchased by consumers in the forum State." *AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 689 (E.D. Va. 2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). But this theory "cannot supplant the requirement that a defendant in some way purposefully avail itself of forum law." *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir. 1989). Under Fourth Circuit precedent, "the mere likelihood that a product will find its way into the forum State" alone fails to satisfy jurisdiction. *Id.* Instead, "[j]urisdiction is . . . proper only where the defendant's contacts create a 'substantial connection' with the forum." *Id.* (quoting *Burger King*, 471 U.S. at 475). *See also AESP, Inc.*, 29 F. Supp. 3d at 689 ("The Fourth Circuit . . . made clear that a non-resident defendant may only be subject to personal jurisdiction under the 'stream of commerce' theory if that defendant engaged in some activity purposely directed at the forum state.") (citing *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994)).

Even under the stream of commerce theory, Precision Global fails to make a prima facie showing that United Health, through its own conduct, purposefully availed itself of the privilege of conducting business in Virginia. Precision Global alleges nothing more than that United Health contracted to deliver the tests in Massachusetts knowing that a substantial portion of the tests would be used for CarMax employees in Virginia. Courts, including the Fourth Circuit, have found jurisdiction lacking under similar circumstances.

For example, in *Federal Insurance Co. v. Lake Shore, Inc.*, the Fourth Circuit found no personal jurisdiction over a non-resident defendant in South Carolina even though the defendant [had] made sales to South Carolina residents. 886 F.2d at 658. The defendant did not "directly advertise or solicit customers in South Carolina," the South Carolina residents initiated the sales, and "all products and materials sold to South Carolina residents [were] shipped F.O.B. Michigan."

*Id.*  The Fourth Circuit found that "cumulatively" the sales in South Carolina did not constitute significant activities showing purposeful availment.  *Id.*

As another example, in *Chung v. NANA Development Corp.*, 783 F.2d 1124 (4th Cir. 1986), the Fourth Circuit found that jurisdiction did not exist over an Alaska company that entered into a one-time contract to provide goods to a Virginia resident.  *Id.* at 1128.  Alaska served as the state of contract formation and execution, but the Alaska company "shipped goods to Virginia on this isolated occasion for the convenience of [the plaintiff], who could not remain in Alaska to take delivery there as originally contemplated by the parties."  *Id.*  In finding no purposeful availment, the Fourth Circuit found: "It is immaterial, in this context, that [the defendant] knew of the ultimate destination of the shipment, since the foreseeability of injury in a distant forum is not the touchstone of minimum contacts."  *Id.*

Similarly, in *AESP, Inc.*, the non-resident defendant sold allegedly infringing products to Lynn Electronics, a Pennsylvania corporation, who in turn sold those products to customers in Virginia.  29 F. Supp. 3d at 690.  Although the defendant could expect its products to be sold elsewhere in the United States, including Virginia, the record did not contain any evidence of the defendant directing, marketing, or advertising the sale of products in Virginia.  *Id.* at 690-91.  The Court found that "[t]he mere presence of defendant's products in Virginia is not a contact that subjects defendant to personal jurisdiction when it was Lynn Electronics, not defendant, that sold the products into Virginia."  *Id.* at 691.

Here too, the record contains no allegations of United Health directing activities to Virginia.  United Health did not send goods to Virginia.  It did not direct its sale to Virginia.  It did not advertise in Virginia.  It did not alter its products to conform with Virginia laws.  "Instead, the record reflects no more than that [United Health] might expect that the products would

17

eventually be sold in…Virginia. [This], by itself, [is] an insufficient basis for personal jurisdiction." *Id.  See also Lesnick*, 35 F.3d at 940-41.

Additionally, United Health delivered its products to Massachusetts, not Virginia.  To the extent tests ended up in Virginia, other parties made that happen. "The 'unilateral activity of another party or a third person' cannot satisfy the 'minimum contacts' requirement of due process." *Federal Ins. Co.*, 886 F.2d at 659 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)); *see People Express Airlines, Inc.*, 922 F. Supp. 2d at 546-47 (stating "'[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State'") (quoting *Burger King*, 471 U.S. at 475).

          c.  *Multiple Phone Calls with CarMax Representatives Does Not Constitute Purposeful Availment*

At oral argument, Precision Global made a proffer of additional evidence pertaining to the purposeful availment prong.  Specifically, Precision Global stated that United Health participated in multiple phone calls between representatives of Precision Global and CarMax in which they discussed the terms of the CarMax PO and anticipated distribution and use of the tests.  Precision Global argues that through these discussions with CarMax representatives in Virginia, United Health learned that the vast majority of the tests would be used for CarMax employees in Virginia. Precision Global points to these phone calls as additional evidence of United Health's contacts with Virginia.  This proffer does not alter the Court's analysis and finding that the exercise of personal jurisdiction over United Health would not comport with due process.

"Courts have generally found that communications alone are insufficient to establish jurisdiction." *New Venture Holdings, LLC*, 376 F. Supp. 3d at 693-96 (collecting cases).  Thus, multiple "telephone conversations, such as those that occurred here, are, alone, 'qualitatively insufficient to show purposeful availment.'" *People Express Airlines, Inc.*, 922 F. Supp. 2d at 548

(quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). *See also Rosario v. Wands*, 2009 U.S. Dist. LEXIS 84992, at *12 (E.D. Va. Sept. 17, 2009) (stating that "'[m]ere telephonic, facsimile and written communications in furtherance of a transaction are not sufficient contacts to form a basis for personal jurisdiction'") (quoting *Superfos Invs v. FirstMiss Fertilizer*, 774 F. Supp. 393, 397-98 (E.D. Va. 1991)).[12]

2.  Precision Global's Claims Against United Health Do Not Arise from United Health's Own Contacts with Virginia

The second prong of the due process analysis similarly weighs against the exercise of jurisdiction.  This prong requires that United Health's contacts with Virginia form the basis of Precision Global's claims asserted against it.  They do not.

As discussed above, contacts with Virginia stemming from the existence of the CarMax PO cannot be imputed to United Health.  Additionally, United Health cannot be held accountable for any intended or actual delivery of the tests to Virginia by third parties because it fulfilled its

---

[12] During oral argument, Precision Global asked for leave to amend its Third-Party Complaint to add these proffered allegations if the Court were inclined to grant the Motion to Dismiss.  This request is not properly before the Court because the local rules require that motions be made in writing and accompanied by a brief outlining legal authority.  *See* Local Civil Rule 7(F).  Moreover, it is curious as to why these additional allegations were not raised in briefing on the Motion to Dismiss, in accompanying affidavits, or otherwise.

In any event, the Court considered the proffer, including viewing the allegations in the light most favorable to Precision Global, in connection with its jurisdictional analysis.  Even so, the allegations in the Third-Party Complaint and the additional evidence raised at oral argument "fall short of making the prima facie showing necessary for this Court to exercise personal jurisdiction over" United Health.  *Long v. Chevron Corp.*, 2011 U.S. Dist. LEXIS 99513, at *49 (E.D. Va. Sept. 2, 2011).  Accordingly, the Court recommends that the oral request for leave to amend be denied because the proposed amendment would be futile.  *See Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.,* 576 F.3d 172, 193 (4th Cir. 2009) (stating that "leave to amend should be denied . . . when the amendment . . . would be futile").  *See also Long*, 2011 U.S. Dist. LEXIS 99513, at *52 (denying leave to amend as futile "since Plaintiff ha[d] failed to make a prima facie showing of personal jurisdiction over Defendants" and "ha[d] failed to argue that she has facts in her possession that could be added to a second amended complaint in order to show jurisdiction is proper").

own contractual obligations by delivering the tests to Massachusetts.  Therefore, the only contacts of United Health with Virginia appear through the allegation that United Health knew Precision Global was contracting separately with a Virginia-based company and from Precision Global's proffer regarding multiple phone calls between representatives of United Health, Precision Global, and CarMax, a Virginia-based company.  These few contacts, however, do not serve as the basis of Precision Global's claims asserted against United Health, even viewing them in the light most favorable to Precision Global.

In *PBM Capital Investments, LLC*, the court found that even though the defendant knew it was dealing with a Virginia-based company, the tortious conduct at issue allegedly occurred outside of Virginia, specifically in Sweden, Wisconsin, and Illinois.  *PBM Capital Invs.*, 2016 U.S. Dist. LEXIS 96055, at *7.  "Knowledge on the part of [the defendant] that it was dealing with a Virginia company" was found insufficient to confer jurisdiction because the defendant's own contacts with Virginia did not give rise to the lawsuit.  *Id.*  "'Although the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.'"  *Id.* at *8 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997)).  The fact that the plaintiff "happened to reside in Virginia" did not make the plaintiff's claims arise from the defendant's own contacts.  *Id.*

Similarly, Precision Global's claims against United Health do not stem from any of United Health's contacts with Virginia.  As discussed above, Precision Global's contracting with CarMax, a Virginia-based company, and United Health's knowledge of the same does not change that analysis.  Precision Global has not made a prima facie showing connecting its claims against

United Health to any of United Health's connections with Virginia. Therefore, the second prong of the due process analysis similarly counters against the exercise of jurisdiction.

> 3. The Exercise of Jurisdiction over United Health Would Not Be Constitutionally Reasonable

Under the third prong, the Court considers various factors to determine an appropriate forum for the claims at issue, including:

> "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies."

*New Venture Holdings*, 376 F. Supp. 3d at 697 (quoting *Consulting Eng'rs*, 561 F.3d at 279).

Applying these factors, the Court finds that United Health, as an Illinois company, "would bear at least some burden if it were forced to defend the litigation in Virginia…[as] its principals and witnesses would have to travel from [Illinois] to Virginia." *Id.* Virginia has little interest in adjudicating this dispute between companies based in Georgia and Illinois over a contract to be performed in Massachusetts. *Id.* While Precision Global has an interest in obtaining convenient and effective relief by asserting the Third-Party Complaint in the same forum in which it has been sued, it would not be left without recourse if the Court finds it lacks jurisdiction over United Health. *Id.* "[I]t has numerous appropriate fora in which to bring" the claims raised in the Third-Party Complaint. *Id.* Finally, this dispute would not further develop any fundamental social policy that Virginia has a unique interest in litigating. Weighing these factors, the Court finds that the exercise of jurisdiction over United Health would not comport with due process.

## V.   CONCLUSION

After careful consideration of the record, and for the reasons set forth above, the Court recommends that United Health's Motion to Dismiss for Lack of Jurisdiction (ECF No. 11) be

GRANTED without prejudice, and the Motion for Hearing be DENIED AS MOOT (ECF No. 18).

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States

District Judge M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_/s/_

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date:_ May 17, 2023_