IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CARMAX ENTERPRISE SERVICES, LLC,

     Plaintiff,

   v.

PRECISION GLOBAL MEDICAL
DISTRIBUTORS, LLC d/b/a PRECISION
GLOBAL MD, LLC,

     Defendant/Third-Party
     Plaintiff,

   v.

DAVID SUMNER, *et al.*,

     Third-Party Defendants.

Civil Action No. 3:22cv463

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant/Third-Party Plaintiff Precision Global

Medical Distributors, LLC's ("Precision Global") Motion for Default Judgment Against Third-

Party Defendants Robert Ekstedt, Global Health Supply, LLC, Ekstedt Enterprises, LLC, and It's

Nanoed, Inc. (collectively, the "Ekstedt Defendants")[1] (the "Motion"). (ECF No. 37.) For the

reasons that follow, the Court will DENY the Motion.

---

[1] The Third-Party Complaint, (ECF No. 5), and the Memorandum in Support of the Motion for Default Judgment, (ECF No. 38), collectively assert the following allegations regarding the Ekstedt entities. Mr. Ekstedt is the Chief Executive Officer of Global Health, President of It's Nanoed, and managing member of Ekstedt Enterprises (collectively, the "Ekstedt Entities"), each entity having a principal place of business in Las Vegas, Nevada and two of them listing an identical business address. (ECF No. 5 ¶¶ 5–8.) At the direction and control of Mr. Ekstedt, each of the Ekstedt Entities is used by the other entities as if they were the assets of the other entities, and their funds used for the personal benefit of Mr. Ekstedt. (ECF No. 38, at 2; ECF No. 5 ¶ 9.) The Ekstedt Entities share the same office space, personnel, and employees and are undercapitalized to avoid their debts and obligations. (ECF No. 5 ¶ 9.)

## I.  Factual and Procedural Background

### A.      Factual Background

On October 27, 2021, CarMax Enterprise Services, LLC ("CarMax") sent a purchase

order (the "CarMax PO") to Precision Global.  (ECF No. 5 ¶ 12.)  The CarMax PO purchases

"120,960 COVID-19 Antigen Rapid Test Kits" in exchange for $1,088,640.00 and requires the

tests be "approved by the Food & Drug Administration ('FDA')."  (ECF No. 5 ¶ 12; see ECF

No. 5-1, at 1 ¶ 3.[2])  It lists the shipping address as "CarMax MA Inventory Warehouse" in

Massachusetts and provides that "delivery of Products shall be F.O.B. place of destination."[3]

(ECF No. 5-1, at 1.)  The CarMax PO provides Virginia addresses for the invoice and any

notices issued pursuant to the purchase order.  (ECF No. 5-1, at 1, 2.)  It also contains a choice of

---

Because the clerk entered default against the Ekstedt Defendants, (ECF No. 28), the
Court takes all factual allegations in the pleadings as admitted.  See Ryan v. Homecomings Fin.
Network, 253 F.3d 778, 780 (4th Cir. 2001) (noting that "the defendant, by his default, admits the
plaintiff's well-pleaded allegations of fact") (quoting Nishimatsu Constr. Co., Ltd. v. Houston
Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (other citations omitted)).

This Court concludes that finding that Mr. Ekstedt and the Ekstedt Entities "are alter
egoes because there are no separate personalities . . . and adhering to the formal separation
between them would allow an injustice to occur," this Memorandum Opinion treats Mr. Ekstedt
and the Ekstedt Entities collectively throughout, as "the Ekstedt Defendants."  (ECF No. 5 ¶ 9.)

[2] Paragraph 3 of the CarMax PO concerns warranties and states, in relevant part: "Vendor
warrants that the Products and/or Services are . . . (vi) in strict conformance with all applicable
regulatory standards whether governmental or industry sponsored[.]"  (ECF No. 5-1, at 1 ¶ 3.)
The Court presumes without deciding that FDA approval constitutes one such regulatory
standard.

[3] "FOB, short for 'free on board,' is '[a] mercantile term denoting that the seller is
responsible for delivering goods . . . to the consignee at a specific location."  Bay Tobacco, LLC
v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 494 (E.D. Va. 2003) (quoting Black's
Law Dictionary 676 (7th ed. 1999)).  The place of destination, here Massachusetts, is the place
where the title and risk of loss passes to the purchaser, CarMax.  See Fellowes, Inc. v. Michilin
Prosperity Co., 491 F. Supp. 2d 571, 578 (E.D. Va. 2007).

law and venue provision designating Virginia as the governing law and proper forum for any

disputes. (ECF No. 5-1, at 3.)

The CarMax PO prohibits Precision Global from assigning any rights or obligations

without CarMax's written consent. (ECF No. 5-1, at 2.)

To fulfill its obligations in the CarMax PO, Precision Global submitted a separate

purchase order (the "Precision Global PO") to United Health Solutions, LLC ("United Health").

(ECF No. 5 ¶ 13.)  The Precision Global PO orders 120,960 "FlowFlex OTC Single Pack Rapid

Antigen Test" kits for a total price of $846,720.  (ECF No. 5-2, at 1.)  It lists a shipping address

in Massachusetts and a payment address in Illinois.  (ECF No. 5-2, at 1.)  The Precision Global

PO does not contain any choice of law or choice of forum provisions, nor does it by its terms

incorporate or reference the Carmax PO.  (*See* ECF No. 5-2.)

United Health then contracted with Global Health Supply, LLC ("Global Health") (the

"United Health/Global Health Contract") to procure and provide the Test Kits to fulfill the

Precision Global PO and the CarMax PO.  (ECF No. 5 ¶ 14.)  Global Health "was informed and

was aware that the United Health/Global Health Contract was intended to supply and fulfill the

CarMax [PO] and Global Health agreed to do so."  (ECF No. 5 ¶ 14.)  Global Health

"understood and accepted that Precision Global was an intended third-party beneficiary of the

United Health/Global Health Contract."  (ECF No. 5 ¶ 14.)[4]

Global Health eventually delivered the test kits to CarMax Business Services, LLC.

(ECF No. 5 ¶ 22.)  The Bill of Lading provides that the delivery was to "Fulfillment America

---

[4] Global Health separately contracted with Sumner Group to fulfill the United
Health/Global Health Contract (the "Global Health/Sumner Group Contract").  (ECF No. 5 ¶ 15.)
Precision Global names these additional parties as third-party defendants as well.  (*See generally*
ECF No. 5.)  However, because Third-Party Defendants David Sumner and Sumner Group
Health Medical Supplies Limited have not been served in this action, this Memorandum Opinion
does not address the claims against them.

Inc[,] 17 Progress Rd[,] Billerica[,] MA 01821." (ECF No. 5-3, at 1.)  In January 2022, shortly after delivery of the tests to the Massachusetts address, ACON Laboratories, Inc. recalled the test kits because their import "had not been approved, cleared, or authorized by the [FDA]." (ECF No. 5 ¶ 23.)

On February 17, 2022, Global Health sent a letter, signed by Robert Ekstedt, to United Health, stating that it "would issue a full refund to United Health which would take 'approximately 45 to 60 days' after the product was returned." (ECF No. 5 ¶¶ 26, 28 (quoting ECF No. 5-5, at 2).)  Based on these assurances, Precision Global instructed CarMax to "ship the rejected product back to Global Health in anticipation of a full refund." (ECF No. 5 ¶ 29.)  On February 24, 2022, CarMax "rejected the Test Kits and demanded a return of the $1,088,640.00 it paid" to Precision Global. (ECF No. 5 ¶ 24.)  On four occasions throughout March 2022, Global Health informed Precision Global that a "letter with the official date for the funds transfer" was just around the corner, but "no letter was ever received." (ECF No. 5 ¶¶ 30–33.)

On April 5, 2022, Global Health informed Precision Global that "refund amounts would be tendered during the week of April 11, 2022," but "[n]o such funds were ever tendered." (ECF No. 5 ¶ 34.)  In June 2022, another (unserved) Third-Party Defendant, David Sumner, "confirmed that the test kits arrived in the U.K.," but "neither Precision Global nor CarMax ha[s] received a refund for the reject[ed] Test Kits." (ECF No. 5 ¶¶ 37, 39.)  Although Precision Global returned $241,920 and United Health returned $116,040 to CarMax, CarMax has not received a full refund. (ECF No. 5 ¶ 25.)

4

B.    **Procedural Background**

1.    **Complaint and Third-Party Complaint**

On June 27, 2022, CarMax Enterprise Services, LLC ("CarMax") filed a Complaint against Precision Global seeking damages for breach of contract and money had and received, resulting from Precision Global's alleged failure to provide usable COVID-19 tests as required by the parties' contract.  (ECF No. 1, at 1.)  CarMax seeks $730,680, the balance that it has not yet been refunded, plus interests, costs, and fees.  (ECF No. 1, at 5.)

On August 26, 2022, Precision Global filed, along with its Answer, a Third-Party Complaint against Third-Party Defendants United Health Solutions, LLC, David Sumner, Sumner Group Health Medical Supplies Limited, Robert Ekstedt, Global Health Supply, LLC, Ekstedt Enterprises, LLC, and It's Nanoed, Inc. (collectively, the "Third-Party Defendants") (the "Third-Party Complaint").[5]  (ECF No. 5, at 1.)

---

[5] The Third-Party Complaint asserts six claims:

(1) Count I—Indemnity against all Third-Party Defendants, seeking to hold them "vicariously liable to Precision Global for the full amount to which Precision Global is found liable" (ECF No. 5 ¶¶ 45–48);

(2) Count II—Breach of Contract against United Health (ECF No. 5 ¶¶ 49–56);

(3) Count III—Fraud against Mr. Sumner, Sumner Group, Mr. Ekstedt, and Ekstedt Entities, alleging that these defendants "fraudulently induced Precision Global to enter into the Precision Group [*sic*] P.O. by making false and misleading representations" that the test kits were FDA-approved (ECF No. 5 ¶¶ 57–65);

(4) Count IV—Aiding and Abetting/Conspiracy to Commit Fraud against Mr. Sumner, Sumner Group, Mr. Ekstedt, and Ekstedt Entities (ECF No. 5 ¶¶ 66–72);

(5) Count V—Money Had and Received against all Third-Party Defendants, because "equity and good conscience should not permit" the Third-Party Defendants to retain the $730,680 or any portion thereof (ECF No. 5 ¶¶ 73–76);

5

### 2.   United Health's Motion to Dismiss for Lack of Jurisdiction

On November 7, 2022, United Health filed a Motion to Dismiss for Lack of Jurisdiction, arguing that personal jurisdiction in Virginia cannot lie over a contract dispute between Georgia-based Precision Global and Illinois-based United Health where the contract designated Massachusetts as the place of performance. (ECF No. 11; *see also* ECF No. 32, at 4–5.)  On November 21, 2022, Precision Global filed a Memorandum in Opposition. (ECF No. 16.)[6]  On December 6, 2022, United Health filed its Reply. (ECF No. 17.)

On May 3, 3023, a Hearing on the Motion to Dismiss was held before the Honorable Summer L. Speight. (ECF No. 30.)  On May 17, 2023, Magistrate Judge Speight issued a Report & Recommendation ("R&R") finding "that Precision Global has failed to make a prima facie showing of personal jurisdiction over United Health" and recommending that the Court grant United Health's Motion to Dismiss. (ECF No. 32, at 1, 5.)  On June 2, 2023, this Court adopted the findings of the R&R, granted United Health's Motion to Dismiss, and denied as moot United Health's Motion for a Hearing. (ECF No. 33, at 2.)

---

(6) Count VI—Unjust Enrichment against Mr. Sumner, Sumner Group, Mr. Ekstedt, and Ekstedt Entities, asserting that "[t]hese Third-Party Defendants have been unjustly enriched at the expense of Precision Global" by the Third-Party Defendants retaining the $730,680 or portions thereof despite having received the returned test kits (ECF No. 5 ¶¶ 77–81); and,

(7) Count VII—Attorneys' Fees against all Third-Party Defendants, asserting that Precision Global is "entitled to its reasonable attorneys' fees, litigation expenses, and costs for having to maintain and defend this action" based on Third-Party Defendants' acts. (ECF No. 5 ¶¶ 82–83.)

[6] Precision Global unsuccessfully argued that there were sufficient minimum contacts to establish personal jurisdiction in Virginia because United Health knew that: (1) the Precision Global PO was intended to fulfill the CarMax PO, which contained Virginia choice of law and forum provisions (ECF No. 16, at 2); (2) CarMax is a Virginia-based company (ECF No. 16, at 2); and (3) a significant number of the tests would be used in Virginia (ECF No. 16, at 3–4).

### 3. Default and Default Judgment Against the Ekstedt Defendants

On April 26, 2023, Precision Global filed a Motion for Entry of Default against the Ekstedt Defendants (the "Motion for Default"). (ECF No. 27.)  In the Motion for Default, Precision Global asserts that each of the Ekstedt Defendants has been served, has "failed to answer or otherwise provide a response," and is "not in the military, a minor, or an incompetent person," and Precision Global "requests that the Clerk of the Court enter default" against the Ekstedt Defendants. (ECF No. 27, at 2–3.)  On April 27, 2023, the Clerk filed an Entry of Default against the Ekstedt Defendants. (ECF No. 28.)

On July 28, 2023, Precision Global entered a Motion for Default Judgment as to the Ekstedt Defendants (the "Motion"). (ECF No. 37.)[7]  The time for the Ekstedt Defendants to respond to the Motion—August 11, 2023—has long since passed.  The Motion for Default Judgment is therefore ripe for review.

### II.  Standard of Review

### A.  Default and Default Judgment

Federal Rule of Civil Procedure 55 governs default and default judgment.  Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  The party seeking entry of default judgment may then "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus

---

[7] This Motion came after the Court, on July 20, 2023, entered an Order directing Precision Global to act on the Clerk's Entry of Default before July 28, 2023, or face dismissal of the case "without prejudice for failure to prosecute." (ECF No. 36, at 2.)

established . . . ." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (quoting *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)))).

The clerk's entry of default does not itself warrant the Court's entry of default judgment. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 419 n.6 (4th Cir. 2010) (noting that "[e]ntry of default raises no protectable expectation that a default judgment will follow") (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998) (citation omitted)). Rather, entry of default judgment is left to the discretion of the trial court. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203–04 (4th Cir. 2006) ("*Brake*"). Before entry of default judgment, the Court must determine whether the allegations of the complaint support the relief sought. *See Brake*, 439 F.3d at 203. This is so because "[d]efault is a harsh measure because it ignores the merits," *Bogopa Serv. Corp. v. Shulga,* No. 3:08-CV-365 (MR), 2009 WL 1628881, at *3 (W.D.N.C. June 10, 2009), and "the Fourth Circuit has a 'strong policy that cases be decided on the merits.'" *State Employees' Credit Union v. Nat'l Auto Leasing, Inc.,* No. 2:06-CV-663 (JBF), 2007 WL 1459301, at *1 (E.D. Va. May 14, 2007) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

## B.   Relationship Between Personal Jurisdiction and Default Judgment

Personal jurisdiction is a prerequisite to a court's power to enter a default judgment against a defendant. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication."); *see also Kumar v. Rep. of Sudan*, 880 F.3d 144, 160 (4th Cir. 2018) (same). "[A]ny judgment entered against a defendant over whom the court does not have personal jurisdiction is void." *Koehler v. Dodwell*, 152 F.3d 304, 306–07

8

(4th Cir. 1998); *see also Foster v. Arletty 3 SARL*, 278 F.3d 409, 414 (4th Cir. 2002) ("A default

judgment entered by a court which lacks jurisdiction over the person of the [defendant] is void

. . . .") (quoting *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir.

1992)); *Armco, Inc. v. Penrod-Stauffer Bldg. Systems, Inc.*, 733 F.2d 1087, 1087 (4th Cir. 1984)

(concluding "that the [default] judgment was void for lack of personal jurisdiction of the

defendant" and reversing); *Kumar*, 880 F.3d at 152 (observing that "[i]f the district court lacked

personal jurisdiction, then the judgment against [the defendant] is void") (citing *Koehler*, 152

F.3d at 306–07); *Mid-Century Ins. Co. v. Thompson*, 2:18-CV-459 (MSD), 2019 WL 3769952, at

*3 (E.D. Va. Aug. 9, 2019) ("[A] judgment is void when a court enters it without personal

jurisdiction over a defendant . . . .") (citing *Armco, Inc.*, 733 F.2d at 1089); *Tube-Mac Industries,*

*Inc. v. Campbell*, 2:20-CV-197 (RCY), 2021 WL 291281, at *4–5 (E.D. Va. Jan. 28, 2021)

(declaring the Clerk's Entry of Default void and setting it aside after finding that a Western

District of Pennsylvania district court lacked personal jurisdiction over the defendant at the time

that court entered default).

      "The plaintiff bears the burden of alleging facts sufficient to support a finding of personal

jurisdiction over the defendant." *Charter Jet Travel, LLC v. NCA Maxjet, Inc.*, 1:09-CV-248,

2011 WL 13228425 (LO), at *1 (E.D. Va. June 6, 2011) (citing *Young v. New Haven Advocate*,

315 F.3d 256, 261 (4th Cir. 2002) ("The plaintiff, of course, has the burden to establish that

personal jurisdiction exists over the out-of-state defendant.")) "This is true even where the

defendant is in default for having failed to respond to the complaint." *Charter Jet Travel, LLC*,

2011 WL 13228425, at *1 (citing *Whittaker v. Winner*, 264 F. Supp. 2d 281 (D. Md. 2003)

(noting that plaintiff had failed to allege facts supporting personal jurisdiction over defendants in

default)).

## C.     Personal Jurisdiction

"'Personal jurisdiction is the phrase used to express a court's power to bring a person into its adjudicative process.'" *People Exp. Airlines, Inc. v. 200 Kelsey Assocs.*, 922 F. Supp. 2d 536, 541 (E.D. Va. 2013) (quoting *NobleSec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 525 (E.D. Va. 2009)). The Court may exercise jurisdiction over a defendant based on either general or specific personal jurisdiction "depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).[8] Precision Global does not contend, nor do the pleadings show, that the Ekstedt Defendants have continuous and systematic contacts with Virginia sufficient to trigger general jurisdiction. The Court, therefore, need only determine whether specific jurisdiction exists over the Ekstedt Defendants for the claims Precision Global asserts.

Determining whether personal jurisdiction exists over a non-resident defendant involves a two-step inquiry.[9] *Carefirst of Md., Inc.*, 334 F.3d at 396. First, the Court must determine that the long-arm statute of Virginia, Va. Code Ann. § 8.01-328.1, permits the exercise of jurisdiction. *See id.* Second, the Court must find that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *Id.* Both conditions must be met for the proper exercise of jurisdiction. *Id.*

---

[8] General personal jurisdiction exists over a defendant with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). For a non-resident defendant, those continuous and systematic in-state "activities must render the out-of-state corporation essentially at home in the forum State." *Reed v. Beverly Hills Porsche*, 307 F. Supp. 3d 494, 501 (W.D. Va. 2018) (internal citations omitted).

[9] The same analysis applies when determining jurisdiction over a third-party plaintiff's claims against a third-party defendant, as here. *See NobleSec.*, 611 F. Supp. 2d at 256.

Because the Virginia Supreme Court has held that "its long-arm statute is generally coextensive with the requirements of constitutional due process, courts often merge the statutory and constitutional jurisdictional inquiries." *Prototype Productions, Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 700 (E.D. Va. 2012) (citing *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411 (Fed. Cir. 2009) ("The Virginia long-arm statute has been interpreted by the Supreme Court of Virginia to generally authorize the exercise of jurisdiction to the full extent permitted by the U.S. Constitution. . . . [T]he statutory and constitutional inquiries coalesce into the question whether due process is satisfied by the court's exercise of personal jurisdiction over [the defendant].")).  It is possible for a defendant's Virginia contacts "to satisfy due process but not meet the specific grasp of the Virginia long-arm statute." *See id.* at 701 (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.6 (4th Cir. 2005)).  However, because this Court concludes that the exercise of personal jurisdiction over the Ekstedt Defendants would not comport with the Due Process Clause of the Constitution, it is unnecessary to determine whether the Ekstedt Defendants' activities "satisfy the narrower reach of Virginia's long-arm statute." *See id.* at 701 (citations and internal quotation marks omitted).

When the Court addresses the jurisdictional issue based on the motion papers, supporting legal memoranda, and relevant allegations of the pleadings, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md., Inc.*, 334 F.3d at 396 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *see also Universal Leather, LLC v. Koro Ar, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).  In deciding whether a prima facie showing of personal jurisdiction has been made, "[t]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences

11

for the existence of jurisdiction." *Combs*, 886 F.2d at 676; *see also Universal Leather, LLC*, 773 F.3d at 558 (quoting *Combs*, 886 F.2d at 676).

Here, the Court finds that neither part of the test establishes jurisdiction. Even viewing the allegations in the light most favorable to Precision Global and taking as true the allegations asserted in the Third-Party Complaint, Precision Global has failed to make a prima facie showing of personal jurisdiction over the Ekstedt Defendants. Accordingly, the Court must decline to enter default judgment and must declare the entry of default void for lack of personal jurisdiction over the Ekstedt Defendants.

## III.  Analysis

### A.    The Exercise of Personal Jurisdiction over the Ekstedt Defendants Would Not Comport with the Due Process Clause of the Constitution

The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (finding, when analyzing specific jurisdiction, that the "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State") (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

The Fourth Circuit has adopted a three-part inquiry for analyzing whether specific jurisdiction exists and comports with due process, requiring courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activity in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp*, 561 F.3d at 278 (internal quotations and citations omitted); *see also Carefirst of*

12

*Md., Inc.*, 334 F.3d at 397 (same) (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293

F.3d 707, 711–12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003)).  None of these prongs

confer personal jurisdiction over the Ekstedt Defendants in Virginia.

### 1.   Prong One of the Due Process Test:  The Allegations Do Not Show Purposeful Availment by the Ekstedt Defendants

Under the first prong of the due process test, purposeful availment, courts conduct a case-

by-case analysis of multiple factors, including:

> (1) "whether the defendant maintains offices or agents in the forum state;"
> (2) "whether the defendant owns property in the forum state;" (3) "whether the
> defendant reached into the forum state to solicit or initiate business;" (4) "whether
> the defendant deliberately engaged in significant or long-term business activities
> in the forum state;" (5) "whether the parties contractually agreed that the law of
> the forum state would govern disputes;" (6) "whether the defendant made in-
> person contact with the resident of the forum in the forum state regarding the
> business relationship;" (7) "the nature, quality and extent of the parties'
> communications about the business being transacted;" and (8) "whether the
> performance of contractual duties was to occur within the forum."

*Universal Leather, LLC*, 773 F.3d at 560 (quoting *Consulting Eng'rs*, 561 F.3d at 278) (further

citations omitted)).  Based on the allegations and proffered evidence before the Court, these

factors overwhelmingly, if not entirely, weigh against a finding of purposeful availment.

The Ekstedt Defendants have no offices, employees, or property in Virginia.  No

allegations suggest that the Ekstedt Defendants reached into Virginia to initiate business, or that

the Ekstedt Defendants had any long-term business relationship with Virginia.  The pleadings

contain no allegations about the Ekstedt Defendants making in-person visits to Virginia.  The

pleadings do not include any allegations that Precision Global ever communicated directly with

the Ekstedt Defendants about the business being transacted.  Finally, Precision Global does not

assert that the United Health/Global Health Contract contains a provision selecting Virginia as

the governing law or choice of forum, and the United Health/Global Health Contract's bill of

lading establishes Massachusetts, not Virginia, as the place of performance—the place of

delivery. (*See* ECF No. 5-3, at 1.)  Given these facts, all of the above factors weigh against a

finding of purposeful availment.

> **a.    The CarMax Purchase Order Does Not Create Virginia**
> **Contacts for the Ekstedt Defendants**

Precision Global asserts that it "sufficiently alleges a case for personal jurisdiction"

because "the activities giving rise to the Complaint and Third-Party Complaint occurred, in

whole or in part, in this district and Third-Party Defendants agreed to fulfill and supply the

CarMax PO and thus be bound by its Virginia choice of law and venue provisions." (ECF No.

38, at 8 (citing ECF No. 5, at ¶¶ 11, 13–15).)  Relying on case law, Precision Global also argues

that the "CarMax PO's forum selection clause is enforceable against [the Ekstedt Defendants]"

because "[a]lthough they are non-signatories to the CarMax PO, '[n]on-parties may be bound to

a forum-selection clause if the non-party is "so closely related" to the dispute such that it

becomes "foreseeable" that it will be bound.'" (ECF No. 38, at 8 (quoting *Allianz Ins. Co. of*

*Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000)).)

*Allianz Insurance Company of Canada* concerned a shipment of cargo that "was

delivered to the port of destination in a damaged condition." 131 F. Supp. 2d at 789.  The

plaintiff, insurance provider Allianz Insurance Company of Canada ("Allianz"), sued for "breach

of contract, deviation, negligence, and/or breach of warranty, as well as a violation of

defendants' duties as common carriers and/or bailees." *Id.*  The defendants "jointly filed a

motion to dismiss," arguing that "the forum selection clause in the bill of lading divests this court

of subject matter jurisdiction." *Id.*  Allianz "argue[d] that the forum selection clause [did] not

apply to Allianz because it was not a party to the bill of lading contract." *Id.* at 791.  The *Allianz*

court concluded that "the forum selection clause applie[d] to Allianz, even though it was not

explicitly listed as a party . . . , and did not participate directly in the shipment or in negotiating its terms." *Id.* at 791–92. The court noted that "[t]he contract evidenced by and contained in the bill of lading explicitly concern[ed]" the cargo Allianz insured, and Allianz "inherited its contractual connection to the dispute" as subrogee. *Id.* at 792. Additionally, "it was foreseeable that claims brought under the bill of lading would be governed by its forum selection clause." *Id.* By "fil[ing] suit on the bill of lading," Allianz "thereby accepted its terms, including the forum selection clause[.]" *Id.*

*Allianz Insurance Company of Canada* and the other forum selection clause cases that Precision Global relies upon are inapposite.[10] First, unlike Allianz, who as plaintiff "accepted [the] terms" of the underlying contract by filing suit for breach of that contract, the Ekstedt Defendants are third-party defendants who did not accept the terms of the CarMax PO by initiating this action. *See Alllianz*, 131 F. Supp. 2d at 792. Second, while it is "foreseeable that claims brought under [a] bill of lading would be governed by its forum selection clause," here the claims against the Ekstedt Defendants arise under entirely separate contracts from the CarMax PO containing the forum selection clause conferring jurisdiction in Virginia, namely the Precision Global PO and the United Health/Global Health Contract. *See id.* Third, unlike

---

[10] The Court discusses *Allianz* in detail above but notes that the other cases Precision Global cites are even less comparable, do not bind this Court, or cut against a finding of personal jurisdiction over the Ekstedt Defendants. *See, e.g., directPacket Research, Inc. v. Polycom, Inc.,* 2:18-CV-331 (ALWA), 2019 WL 8065832, at *2–3 (E.D. Va. July 3, 2019) (finding forum selection clause enforceable against non-signatory that was closely related to signatory as a "sister company"); *Watkins v. M/V London Senator*, 112 F. Supp. 551, 517 (E.D. Va. 2000) (finding non-signatory could claim benefit of bill of lading clause that expressly extended protections to signatory's "servants or agents, any independent contractor and his servants or agents, and all others by whom the whole or any part of the Carriage, whether directly or indirectly, is procured, performed or undertaken") (citation omitted) (emphasis removed); *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018) (non-signatories not bound by forum selection clause where non-signatories were neither intended third-party beneficiaries of the contract nor closely related to a signatory).

Allianz's status as "subrogee" to a contracting party, here the Ekstedt Defendants never assumed subrogee status as to the CarMax PO but instead entered into an entirely separate agreement that makes no reference to, and does not incorporate, the CarMax PO or any of its terms. *See id.* Fourth, even presuming for the sake of analysis that subrogation had occurred, the CarMax Purchase Order contained a provision that expressly prohibited the assignment of rights under the contract without CarMax's written consent. (*See* ECF No. 5-1, at 2 ¶ 22.)

       i.    **Precision Global Did Not Demonstrate that the Ekstedt Defendants Were Aware of the Forum Selection Clause in the CarMax Purchase Order**

Nothing in the record indicates that the Ekstedt Defendants were otherwise aware of the forum selection clause buried in a small-font footnote in a contract to which they were not a party, and which they may never actually have seen. (*See* ECF No. 5-1, at 3.) Even presuming the subsequently executed contracts may have been *intended* to fulfill the CarMax PO, and the Ekstedt Defendants may have been *aware* generally of the existence of the CarMax PO, intention and awareness alone are inadequate to subject the Ekstedt Defendants to the forum selection clause of a contract to which they were not a party, may never have seen, and certainly did not agree to either by incorporating it into their own agreement or bringing suit to enforce its terms. *See Reed v. Beverly Hills Porsche*, 307 F. Supp. 3d 494, 500 (W.D. Va. 2018). In no way can the Court find that it was foreseeable to the Ekstedt Defendants that the forum selection clause in the CarMax PO would govern their transaction. *See Allianz*, 131 F. Supp. 2d at 792.

ii.  **The Virginia Long-Arm Statute Cannot Be Invoked Based Merely on Knowledge that Sales Would End Up in Virginia Where Goods Were Actually Supplied in Massachusetts**

Precision Global alternatively contends that Section 8.01-328.1(A)(2)[11] of Virginia's long-arm statute applies because the Ekstedt Defendants knew the tests, or at least a substantial portion of them, would eventually end up in Virginia. Specifically, Precision Global alleges that the Ekstedt Defendants, via Global Health, "w[ere] informed and w[ere] aware that the United Health/Global Health Contract was intended to supply and fulfill the CarMax P.O." and that the Ekstedt Defendants, through Global Health, "agreed to do so." (ECF No. 5, at 11.) But as at least one Virginia district court has persuasively found under similar facts, these allegations fail to establish jurisdiction under Section 8.01-328.1(A)(2).

In *Reed v. Beverly Hills Porsche*, the plaintiff, a Virginia resident, contacted a California company through its website, "kicking off remote negotiations" for the purchase of a car. 307 F. Supp. 3d at 496. The defendant ultimately sent an agreement to the plaintiff in Virginia, which the plaintiff signed in Virginia and returned to the defendant for execution in California. *Id.* at 496, 498. The plaintiff then arranged to have the vehicle towed from California to Virginia. *Id.* at 499. In deciding whether it could exercise personal jurisdiction over the California company, the *Reed* court found subsection (A)(2) inapplicable because "the thing supplied—the car—was supplied *in California*, not Virginia," while subsection (A)(2) applies where persons "[c]ontract[] to supply services or things in [Virginia]." *Id.* (emphasis in original); *see* Va. Code Ann. § 8.01-328.1(A)(2). The court found that "delivery was complete" when the plaintiff's agent, a towing company, picked up the car in California. *Id.* Arguing for jurisdiction, the plaintiff "point[ed]

---

[11] Section (A)(2) of Virginia's long-arm statute permits the exercise of personal jurisdiction over a person as to a cause of action arising from the person's "[c]ontracting to supply services or things in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(2).

out that 'it was known from the very beginning' that he was in Virginia, and that therefore the

car would be used in the Commonwealth, even though [he] arranged to pick it up in California."

*Id.* at 500.  Considering this, the *Reed* court nonetheless found that while that "may be true, [] it

is legally irrelevant under the terms of subsection (A)(2)" which does not look to the location

where the goods "eventually end up," but to the place of supply.  *Id.*

      For similar reasons, even if the Ekstedt Defendants had knowledge that the goods would

"eventually end up" in Virginia, Section 8.01-328.1(A)(2) has no application here.  *See Reed*,

307 F. Supp. 3d at 500 (noting that knowledge that the goods will be used elsewhere "is legally

irrelevant under the terms of subsection (A)(2)").  Instead, the only relevant inquiry is the

location of supply—which, under the United Health/Global Health Contract, was Massachusetts.

*See, e.g.*, *Richard v. Ivy Grp. Int'l, Inc.*, No. 3:10-CV-851 (JRS), 2011 WL 1814929, at *6 (E.D.

Va. May 11, 2011) (finding that subsection (A)(2) applied only where a court concludes that a

contract was made or performed in Virginia); *Processing Rsch., Inc. v. Larson*, 686 F. Supp. 119,

122 (E.D. Va. 1988) (finding subsection (A)(2) inapplicable when the goods were supplied in

Colorado).  "The long arm of § 8.01 does not extend to a contract formed and performed outside

Virginia."  *Promotions, Ltd. v. Brooklyn Bridge Centennial Comm.*, 763 F.2d 173, 175 (4th Cir.

1985) (finding that jurisdiction did not lie under subsection (A)(2) because the contract "was

made and was to be carried out in New York," not Virginia).

      The facts before this Court counsel against a finding of jurisdiction even more strongly

than did those in *Reed*, where the defendant had sent a contract for signature in Virginia.  Here,

no allegation that the United Health/Global Health Contract *ever* entered Virginia, even for

signature, exists.  *See* 307 F. Supp. 3d at 496, 498.

Section 8.01-328.1(A)(2) does not confer jurisdiction over the Ekstedt Defendants because the CarMax PO's forum selection clause is not enforceable against the Ekstedt Defendants and because the United Health/Global Health Contract was made and was carried out entirely outside of Virginia, with a location of supply located in Massachusetts.

### iii.   The Court Will Not Impute Precision Global's Contacts onto the Ekstedt Defendants

Further, the law does not support efforts to bootstrap one party's contacts onto another. For example, in *Lesnick v. Hollingsworth & Vose Co.*, the plaintiff asked the court to exercise personal jurisdiction in Maryland over the defendant, an out-of-state manufacturer. 35 F.3d 939, 941 (4th Cir. 1994). The plaintiff argued that the defendant should be imputed with a non-resident distributor's "clearly adequate contacts with Maryland because it 'purposefully availed itself of the privilege of conducting business, through [the distributor's] sales, in the entire United States,'" including Maryland. *Id.* The district court granted a motion to dismiss for lack of personal jurisdiction, finding that the defendant was "not engaged directly, as is [the distributor], in bringing the alleged offending product into Maryland, or doing anything with respect to Maryland, other than supplying its product to the defendant [distributor] in a state other than Maryland." *Id.* The Fourth Circuit affirmed, finding "no affirmative action by [the defendant] rising to the level of purposeful availment." *Id.* at 947.

Similarly here, the Ekstedt Defendants did not purposefully avail themselves of the jurisdiction of Virginia by virtue of their knowledge that the United Health/Global Health Contract related to a separate contract, the Precision Global PO, which itself related to a third distinct contract between Precision Global and CarMax, a Virginia-based entity. Just as "the plaintiff cannot be the only link between the defendant and the forum," a third-party cannot serve as that link either. *See New Venture Holdings, LLC v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683,

19

694 (E.D. Va. 2019) (internal citations omitted). That the CarMax PO "envisions one party discharging its obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract," much less a non-party to the contract, such as the Ekstedt Defendants. *See id.* Again, the Ekstedt Defendants' own conduct "must form the necessary connection with the forum State," not the conduct of CarMax or Precision Global (or even United Health). *See id.*

As it did with when granting United Health's Motion to Dismiss for Lack of Personal Jurisdiction, (ECF No. 11), the Court declines to impute the Virginia choice of law and forum provision from the CarMax PO onto the Ekstedt Defendants. Such a provision in a third party's contract cannot form the basis of personal jurisdiction against the Ekstedt Defendants. No such provision appears in the Precision Global PO, and the CarMax PO does not serve as the basis of Precision Global's claims against the Ekstedt Defendants. In these circumstances, the CarMax PO's choice of law and forum provision does not create jurisdiction over the Ekstedt Defendants, a non-party to that contract. *See Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*, 908 F. Supp. 2d 763, 770 n.6 (W.D. Va. 2012).

### b. The Stream of Commerce Theory Does Not Show Purposeful Availment

Under the stream of commerce theory, personal jurisdiction exists over a defendant who "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 689 (E.D. Va. 2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)). But this theory "cannot supplant the requirement that a defendant in some way purposefully avail itself of forum law." *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir. 1989). Under Fourth Circuit precedent, "the mere likelihood that a product will find its

way into the forum State" alone fails to satisfy jurisdiction. *Id.* Instead, "[j]urisdiction is . . .

proper only where the defendant's contacts create a 'substantial connection' with the forum." *Id.*

(quoting *Burger King*, 471 U.S. at 475). *See also AESP, Inc.*, 29 F. Supp. 3d at 689 ("The Fourth

Circuit . . . made clear that a non-resident defendant may only be subject to personal jurisdiction

under the 'stream of commerce' theory if that defendant engaged in some activity purposely

directed at the forum state.") (citing *Lesnick*, 35 F.3d at 945–46).

    First, even under the stream of commerce theory, Precision Global fails to make a prima

facie showing that the Ekstedt Defendants, through their own conduct, purposefully availed

themselves of the privilege of conducting business in Virginia.  Precision Global alleges nothing

more than that the Ekstedt Defendants, via Global Health, contracted to deliver tests in

Massachusetts knowing that a substantial portion of the tests would be used by CarMax in

Virginia.  Courts, including the Fourth Circuit, have found jurisdiction lacking under similar

circumstances. *See, e.g., Federal Ins. Co.*, 886 F.2d at 658 (finding no personal jurisdiction in

South Carolina over a non-resident defendant even though the defendant had made sales to South

Carolina residents but did not "directly advertise or solicit customers in South Carolina," the

South Carolina residents initiated the sales, and "all products and materials sold to South

Carolina residents [were] shipped F.O.B. Michigan"); *Chung v. NANA Development Corp.*, 783

F.2d 1124, 1128 (4th Cir. 1986) (finding no jurisdiction over an Alaska company that entered

into a one-time contract to provide goods to a Virginia resident where Alaska was the state of

contract formation and execution but the company "shipped goods to Virginia on this isolated

occasion for the convenience of [the plaintiff]," noting that "[i]t is immaterial, in this context,

that [the defendant] knew of the ultimate destination of the shipment, since the foreseeability of

injury in a distant forum is not the touchstone of minimum contacts"); *AESP, Inc.*, 29 F. Supp. 3d

at 690, 691 (finding that "[t]he mere presence of defendant's products in Virginia is not a contact that subjects defendant to personal jurisdiction when it was [the reseller], not defendant, that sold the products into Virginia").

Here too, the record contains no allegations of the Ekstedt Defendants directing activities to Virginia. The Ekstedt Defendants did not send goods to Virginia, direct sales to Virginia, advertise in Virginia, or alter their products to conform with Virginia laws. "Instead, the record reflects no more than that [the Ekstedt Defendants] might expect that the products would eventually be sold in . . . Virginia. [This], by itself, [is] an insufficient basis for personal jurisdiction." *See AESP, Inc.*, 29 F. Supp. 3d at 690–91; *see also Lesnick*, 35 F.3d at 940–41.

Second, the Ekstedt Defendants delivered their products to Massachusetts, not Virginia. To the extent tests ended up in Virginia, other parties made that happen. "The 'unilateral activity of another party or a third person' cannot satisfy the 'minimum contacts' requirement of due process." *Federal Ins. Co.*, 886 F.2d at 659 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)); *see People Express Airlines, Inc.*, 922 F. Supp. 2d at 546–47 (stating "'[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State'") (quoting *Burger King*, 471 U.S. at 475.)

2. **Prong Two of the Due Process Test: Precision Global's Claims Against the Ekstedt Defendants Do Not Arise from the Ekstedt Defendants' Own Contacts with Virginia**

The second prong of the due process analysis similarly weighs against the exercise of jurisdiction. This prong requires that the Ekstedt Defendants' contacts with Virginia form the basis of Precision Global's claims asserted against it. They do not.

As discussed above, contacts with Virginia stemming from the existence of the CarMax PO cannot be imputed to the Ekstedt Defendants. The Ekstedt Defendants also cannot be held accountable for any intended or actual delivery of the tests to Virginia by third parties because they fulfilled their own contractual obligations by delivering the tests to Massachusetts. Therefore, the only contacts of the Ekstedt Defendants with Virginia appear through the allegation that the Ekstedt Defendants knew United Health was contracting with Precision Global who was contracting with a Virginia-based company. This knowledge, however, does not constitute a 'contact' and cannot serve as the basis of Virginia's jurisdiction over the Ekstedt Defendants.

In *PBM Capital Investments, LLC v. Gen. Elec. Co.*, the court found that "[k]nowledge on the part of [the defendant] that it was dealing with a Virginia company" was insufficient to confer jurisdiction because the conduct at issue allegedly occurred outside of Virginia and the defendant's own contacts with Virginia did not give rise to the lawsuit. No. 3:15-CV-00037 (NKM), 2016 WL 3982590, at *3 (W.D. Va. July 22, 2016).

Similarly here, Precision Global's claims against the Ekstedt Defendants do not stem from any of the Ekstedt Defendants' contacts with Virginia. As discussed above, Precision Global's contracting with CarMax, a Virginia-based company, even if the Ekstedt Defendants knew that, does not confer jurisdiction where the Ekstedt Defendants' conduct occurred outside

of Virginia and the Ekstedt Defendants' own contacts with Virginia did not give rise to the

lawsuit. *See id.* Unlike the defendant General Electric Company in *PBM Capital Investments,*

*LLC,* who had contacts with Virginia unrelated to the lawsuit, this Court has no evidence before

it to suggest that the Ekstedt Defendants had any contacts with the Commonwealth. *See id.*

Precision Global has not made a prima facie showing connecting its claims against the Ekstedt

Defendants to any of the Ekstedt Defendants' connections with Virginia. Therefore, the second

prong of the due process analysis similarly counsels against the exercise of jurisdiction.

### 3. Prong Three of the Due Process Test: The Exercise of Jurisdiction Over the Ekstedt Defendants Would Not Be Constitutionally Reasonable

Under the third prong of the due process analysis, the Court considers various factors to

determine an appropriate forum for the claims at issue, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the
> forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining
> convenient and effective relief; (4) the shared interest of the states in obtaining
> efficient resolution of disputes; and (5) the interests of the states in furthering
> substantive social policies.

*New Venture Holdings*, 376 F. Supp. 3d at 696–97 (quoting *Consulting Eng'rs*, 561 F.3d at 279).

Applying these factors, the Court finds that the Ekstedt Defendants, with citizenship in

Delaware, Montana, and Nevada, (*see* ECF No. 5, at 8–9), "would bear at least some burden if

[they] were forced to defend the litigation in Virginia . . . [as] [their] principals and witnesses

would have to travel from [Delaware, Montana, and Nevada] to Virginia." *See New Venture*

*Holdings*, 376 F. Supp. 3d at 697. Virginia has little interest in adjudicating this dispute between

an entity in Illinois and entities based in Delaware, Montana, and Nevada, concerning a contract

with a Georgia entity to be performed in Massachusetts. *See id.* While Precision Global has an

interest in obtaining convenient and effective relief by asserting the Third-Party Complaint in the

24

same forum in which it has been sued, it is not left without recourse: "[i]t has numerous

appropriate fora in which to bring" the claims raised against the Ekstedt Defendants in the Third-

Party Complaint. *See id.* Finally, this dispute would not further develop any fundamental social

policy that Virginia has a unique interest in litigating. Weighing these factors, the Court finds

that the exercise of jurisdiction over the Ekstedt Defendants does not comport with due process.

### B. Because the Court Lacks Personal Jurisdiction Over the Ekstedt Defendants, the Court Cannot Enter a Default Judgment and Must Declare the Entry of Default Void

"Courts have repeatedly confirmed that personal jurisdiction is necessary before granting

default judgment against a party." *Tube-Mac Industries, Inc.*, 2021 WL 291281, at \*5; *see also*

*Ruhrgas AG*, 526 U.S. at 584 ("Personal jurisdiction . . . is an essential element of the

jurisdiction of a district court, without which the court is powerless to proceed to an

adjudication."). "Moreover, any judgment entered against a defendant over whom the court does

not have personal jurisdiction is void." *Koehler*, 152 F.3d at 306–07; *see also Foster*, 278 F.3d

at 414 ("A default judgment entered by a court which lacks jurisdiction over the person of the

[defendant] is void . . . ."); *Armco, Inc.*, 733 F.2d at 1087; *Kumar*, 880 F.3d at 152 (citing

*Koehler*, 152 F.3d at 306–07).

Having found that the Court lacks personal jurisdiction over the Ekstedt Defendants, the

Court cannot grant default judgment against them. *See Tube-Mac Industries, Inc.*, 2021 WL

291281, at \*5. Further, the earlier entry of default against the Ekstedt Defendants is void for lack

of personal jurisdiction. *See Koehler*, 152 F.3d at 306–07.

Because this Court has determined that it lacks personal jurisdiction over the Ekstedt

Defendants, the Court lacks jurisdiction to evaluate the merits of the Motion for Default

Judgment. (ECF No. 37.)

### IV.  Conclusion

For the foregoing reasons, the Court will deny Precision Global's Motion.  (ECF No. 37.)

Further, the Court will declare void the Clerk's prior Entry of Default.  (ECF No. 28.)

An appropriate Order shall issue.

Date: 01/05/2024
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge